## THE WYOMISSING.
## THE ASHBOURNE.
### Petition of READING CO.

District Court, D. New Jersey.
Jan. 6, 1933.

Macklin, Brown, Lenahan & Speer, of New York City (J. D. Eggleston, of New York City, of counsel), for petitioner.

Insley, Vreeland & Decker, of Jersey City, N. J., and Lynn Wandless & Lanter, of New York City (Berwick B. Lanier, of New York City, of counsel), for receivers of New Jersey Shipbuilding & Dredging Co., and New Jersey Salvage & Dredging Co., and charterers of Drill Boat No. 4.

FAKE, District Judge.

The issues involved here arise on petition in an admiralty proceeding for exoneration and limitation of liability.

The tug Wyomissing, having in tow twenty-nine light coal boats made up of seven tiers of four boats abreast and one boat tailing behind the last tier, was proceeding down the Arthur Kill. A helper, the Ashbourne, was made fast on the starboard side of the tow abreast of the starboard boat of the sixth tier. They were on an ebb tide. In other words, the tide was with them and not flowing against them. Passing through Northwest Reach opposite Prall's Island, the weather was clear and visibility was good. When they arrived at a point beyond the Reach and abreast of the Montezema Asphalt Docks at Tremley Point, a thick fog rolled in from their port side.

The respondent's Drill Boat No. 4 was anchored near the easterly line of the channel from seven hundred to nine hundred feet ahead of or off the bow of the Wyomissing when the fog set in. The pilot of the Wyomissing says he did not see the Drill Boat there but knew it was in that vicinity.

When the fog lowered, the pilot of the Wyomissing immediately sounded the fog signal on his whistle and reduced his speed. He also signaled the helper tug Ashbourne to slow down.

The tow was nine or ten hundred feet long. Thus, it will be noted that at the time the fog came on and while the Wyomissing was at the point abreast of the Montezema Asphalt Docks, there was, at the most, nine hundred feet between the Drill Boat and the Wyomissing, and the tow was about the same number of feet in length. Confronted then with such a situation and bearing in mind the following tide, which at that point set toward the Staten Island shore with a tendency to force the tow to the port and toward that shore, what did the pilot of the Wyomissing or the pilot of the Ashbourne do that may be considered negligence?

It is argued that the anchors of the tugs should have been lowered and the tow held in the position at the place where the fog descended upon them. To have done this would have required the operation of tackle for the lowering of the anchors, and the time so consumed in the following tide would probably have resulted in breaking up the tow causing it to drift into Drill No. 4 or ground on the easterly side of the channel.

Again, it is urged that the helper tug Ashbourne should have been located on the port side and not on the starboard side of the tow because its propeller turned toward the right, which would cause the Ashbourne to move to port when proceeding astern. This brings us to the maneuver which the pilot of the Wyomissing attempted.

With knowledge of the approximate, if not the exact, location of Drill Boat No. 4, the pilot of the Wyomissing concluded to continue forward, passing the Drill Boat on the starboard side of his tow. He knew there were arrows on the Drill Boat directing passage to the westward of the Drill Boat which, if obeyed, would have caused him to attempt passage of the Drill Boat on his port side, and regulations also had been issued to that effect. Since the pilot here was confronted

with an emergency, the regulations have no particular force, for it would be reasonable to disobey them to avoid an accident. Inasmuch as the tide set the tow to port toward the Staten Island shore, and it appearing that the helper tug was near the end of the tow and on the starboard side, it would seem reasonable to attempt passage as the pilot of the Wyomissing intended. Particularly is this so in view of the fact that it was his purpose to round to, after passing the Drill Boat, and bring up at the Cyanamid Docks until the fog lifted. It appears then that the tug Ashbourne was properly placed to force the tow over to port to clear the Drill Boat, and if its propeller in reverse caused it to move to port, that factor is rather in its favor than against it. However, there is much conflict in the testimony as to whether it really would swing to port in reverse; whether it would or would not, its power in motion forward was greater than its reverse power, and on passing the drill to starboard of the tow, it was wiser to have the tug Ashbourne just where it was so it might nose the tow away from the drill should occasion require.

When about two hundred feet away from the Drill Boat, the pilot of the Wyomissing heard for the first time the fog bell of the drill. He had sounded several fog signals on his whistle prior to that without hearing any signals from the Drill Boat, and on hearing the fog bell, the tug Wyomissing was found to be to the westward or on the New Jersey side of the drill with part of the tow passing the forward end of the drill headed in a westerly direction toward the Cyanamid Dock. It was then that one of the boats in the tow came in contact with the Drill Boat and caused the damage complained of. The position of the tug to the westward of the Drill Boat, when the pilot of the tug intended to pass the drill on its eastward side, discloses a miscalculation by the pilot of the tug, either as to the position of the Drill Boat or as to the position of his tug. When it is realized that the fog was so thick at the time that the pilot could see nothing beyond his own vessel; when it is realized that the tide was carrying the tow forward and eastward; when it is realized that the time which elapsed from the setting in of the fog until the collision was but five or ten minutes; and when it is realized that no fog bell was heard from the Drill Boat until collision was inevitable—it will be seen that there is much difficulty in finding any negligence on the part of the pilot of the Wyomissing. Viewing the whole situa-

tion, he was certain to collide with the Drill Boat after the fog engulfed them unless he could, either by a port or a starboard maneuver, direct the force of his moving tow to one side or the other of the Drill Boat. He chose a port maneuver and failed because of the fog and the lack of a loud enough fog bell on the drill, or because the atmospheric or other conditions for which he was not at fault caused him to fail to hear the fog bell if it was sounded. I incline to the view, however, that the fog bell on the drill was not sounded soon enough.

So far as the use of the compass is concerned in the short distances involved in the narrow waterway, it could be of value only as to general direction and of no practical aid in steering the short and close courses which the situation required.

I therefore conclude that neither the Wyomissing nor the Ashbourne were guilty of negligence, and a decree to that effect will be entered.